[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Some of the background facts are not in dispute. On November 16, 1992, the parties entered into a contract of sale for a single family residential dwelling located at 1 Forest Hill Road in New Fairfield, Connecticut. (Plaintiff's Exhibit 1.)
Prior to signing the contract, the Plaintiff (Buyer) hired Mr. Glenn Symon to perform a building inspection. In his report dated October 29, 1992, he found no evidence of water infiltrating in the basement and family room, the flashing around the chimney was secure where visible, and the roof was in fair condition. (Defendants' Exhibit B.) This sale was negotiated by Mr. Thomas Fink, and the Buyer retained Attorney Joseph Saffi to represent her on the contract and at the closing.
The contract was amended by Attorney Saffi with a Schedule B in which three relevant representations were made by the Defendants (Sellers) to the contract, which were effective at the time of closing on December 9, 1992.
1. Any sewage disposal system serving said premises is entirely within its boundary lines and the Seller has no knowledge of any defect or past malfunction of said system.
2. The roof on said dwelling is free from leaks and shall be in the same condition at the time of closing.
3. Seller represents that the basement is free of leaks and there has not been any accumulation of water during Seller's ownership. (Plaintiff's Exhibit 1.)
The Buyer moved her furniture including mattresses into the family room the day after the closing because of a snow storm. She had stored the furniture and mattresses in the basement family room, which was below grade and used by the Sellers as a TV room.
Based on the Buyer's testimony, which the court found credible and probative, these mattresses were soaking wet, and the carpet in this family room was also soaking wet the next day. During the next several weeks, she noticed surface water in the family room and in the garage, and between January, 1993 and September, 1996, the Buyer took some three hundred and eighty (380) photographs to prove the water damage in the family room, damage to the carpet, and the basement floor. (Plaintiff's Exhibit 2.) A rusted heating baseboard was introduced into CT Page 12055 evidence as proof that the water condition in the family room existed over a long period of time. (Plaintiff Exhibit 3.) The photographs and the rusted baseboard provided the court with credible and probative evidence of the water problems that existed at and prior to the time the Buyer occupied these premises.
In an attempt to correct the water problems, the Buyer hired FSM Services to install new footing drains around the foundation with perforated pipe and crushed stone and piped this surface water into a brook, and paid this company $3975 for this corrective work. (Plaintiff's Exhibit 4.) While this work reduced the water problem, it did not eliminate it. Thereafter, she found water leaks in the roof and along the chimney. In October, 1996, she replaced the roof and paid KB Roofing and Siding $4200. (Plaintiff's Exhibit 5.) There was also water damage to the dining room floor and the walls behind the kitchen sink. In the Spring of 1997, she hired a mason to correct the flashing and repoint the chimney, and the water stopped coming into the dwelling. There was no proof offered on the cost of this work which was done in part by her brother, Mr. Gennaro Lalla, without charge. Two weeks after his sister took occupancy, he saw that surface water was coming into the dwelling through the foundation, around the fireplace, in the kitchen, and in the boiler room. He saw that water had seeped through the paneling in the family room and recommended to his sister to have curtain drains installed around the foundation. He also saw that water was coming though a hole on the roof near the chimney. The new roof helped correct this problem and the water stopped coming into the house after the chimney was flashed and repointed.
The Sellers both testified that they never had a water problem in the family room or around the foundation or in the roof during the eight years they lived there. They stated that the carpeting in the family room was never wet, and they were able to use it on a daily basis as a family and TV room, without a water problem. They admitted installing a dehumidifier in this room to control the dampness.
The Seller's neighbor and friend, Mrs. Anna Hadjistav, testified she visited the Sellers every week and never saw any water in the family room or basement.
The court has weighed all the testimony and finds the Buyer's testimony and the evidence more credible that there were water CT Page 12056 problems in the downstairs family room, the basement and garage, and with the roof prior to the closing of title. The photographs taken six weeks after the Buyer moved into the dwelling, and the rusted baseboard, clearly established the damages were caused by the surface water coming into the basement. There was clear and convincing evidence that surface water and rain water were infiltrating into the dwelling before the Buyer took title.
The false representations are set forth in Schedule B paragraph (g) and (h) of the contract which stated that the basement and the roof were free from leaks. (Plaintiff's Exhibit 1.) These were statements of fact which the Buyer relied on in buying the dwelling. Even assuming the Sellers were innocent, and the representations were not intentionally or fraudulently made, the Sellers would be liable. The Supreme Court in Williams Ford,Inc. v. Hartford Courant, 232 Conn. 559, 575 (1995) held that "even an innocent misrepresentation of fact is actionable if the declarant has the means of knowing, ought to know or has the duty of knowing the truth." Gibson v. Capano, 41 Conn. App. 548, 552
(1996). Here the Sellers had the means to know or should have known these representations to be false. Having lived in the dwelling for eight years, the Sellers had the means of knowing or ought to have known or had the duty to know the truth.
The court finds the Buyer has the right or recover the damages sustained in correcting the water problems. Therefore, the Court finds damages in favor of the Plaintiff of $8175 for the corrective repairs she made on the dwelling, together with costs for bringing this action.
The Buyer failed to prove by a preponderance of the evidence that the dwelling had less value because of these misrepresentations. She offered no evidence that the property was worth $20,000 less as claimed after the repairs were made. There was no expert testimony offered as to this claim. The only evidence of her loss or damages were the cost of repairs to correct the water problems.
The Buyer is not entitled to collect punitive damages or attorney's fees under the Connecticut Unfair and Deceptive Trade Practices Act commonly referred to as CUTPA. The only unfair act in this case involved the sale of one residential dwelling.
Section 42-110b(a) of the Connecticut General Statutesentitled Unfair trade practices prohibited. Legislative intent
CT Page 12057 provides: "(a) No person shall engage in unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce." (Emphasis Supplied.) This one sale of a residential dwelling by this Seller does not constitute unfair methods, acts or practices in the conduct of a trade or business. Therefore, the Buyer's CUTPA claim is denied.
Petroni, J.